UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION
at CLEVELAND

| | |
|---|---|
| VENKATRAMAN ARAKONI, individually and on behalf of all other Ohio residents similarly situated, | ) ) ) ) |
| | ) Case No.: 1:20-cv-000092 |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| MEMBERSELECT INSURANCE COMPANY | ) ) ) ) ) ) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT WITH JURY DEMAND

COMES NOW Plaintiff Venkatraman Arakoni ("Arakoni") and individually and on behalf of all others similarly situated, and for his Class Action Complaint against Defendant Memberselect Insurance Company ("AAA") states and allege the following:

### PARTIES, RESIDENCY, JURISDICTION AND VENUE

1. Arakoni is a citizen and resident of Cuyahoga County, Ohio. At all times relevant hereto, Arakoni owned a dwelling located at 1300 Rusnak Trail, Broadview Heights, Ohio (the "Insured Property").

2. Defendant Memberselect Insurance Company ("AAA") is organized under the laws of the State of Michigan with its principal place of business in Dearborn, Michigan. AAA is

authorized to sell property insurance policies in the State of Ohio, and is engaged in the insurance business in the State of Ohio, including Cuyahoga County.

3. AAA engaged in the challenged claims handling practice in a uniform manner and pursuant to a uniform policy.

4. AAA operates a centralized adjustment operation in which its adjusters work on claims for multiple different entities, including Defendant, Auto Club Insurance Association, Auto Club Insurance Company, and Auto Club Property-Casualty Insurance Company, using the same policies and procedures challenged in this case for adjusting insurance claims and conducting business under the name AAA.

5. The events giving rise to the individual claims asserted by Arakoni that are the subject of this action occurred in the Eastern Division at Cleveland of the Northern District of Ohio. AAA has insurance agents in the Eastern Division at Cleveland of the Northern District of Ohio for the conduct of its usual and customary business, including the sale of property insurance policies.

6. On information and belief, this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

7. This Court has personal jurisdiction over Defendant because it has availed itself of the privilege of conducting business and issuing insurance contracts covering structures in the State of Ohio.

**A. Arakoni Property Insurance Policy and Casualty Loss**

8. At all times relevant hereto, Arakoni was the insured pursuant to an insurance contract whereby AAA agreed to insure, inter alia, the Insured Property against property damage, bearing Policy No. HOM016405211 (the "Arakoni Policy").

9. The Arakoni Policy provided insurance coverage for direct physical loss to the buildings located on the insured premises, except as specifically excluded or limited by the Arakoni Policy.

10. This lawsuit only concerns property insurance coverage for buildings, and not personal contents, such as clothes and furniture.

11. Pursuant to the Arakoni Policy, Arakoni paid AAA an annual premium in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

12. On or about February 24, 2019, the Arakoni Property suffered accidental direct physical loss by wind or hail-related circumstances (the "Arakoni Loss").

13. The Arakoni Policy was in effect at the time of the Arakoni Loss, and the Arakoni Loss is compensable under the terms of the Arakoni Policy. As it relates to the Arakoni Loss, there is no applicable exclusion.

14. Arakoni notified AAA of the Arakoni Loss and made a claim against the Arakoni Policy.

15. After its inspection, AAA determined that the Arakoni Loss was covered by the terms of the Arakoni Policy.

16. AAA calculated its ACV payment obligation to Arakoni by first estimating the cost to repair or replace the damage with new materials (RCV), then subtracted depreciation.

17. The Arakoni Policy does not define ACV so as to permit the withholdings complained of herein.

**B. AAA's Calculation of the Arakoni ACV Payment**

18. In adjusting Arakoni's claim, AAA affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate the losses and make its ACV payment to Arakoni.

19. AAA did not calculate any portion of Arakoni's casualty loss by reference to or analysis of the alleged increases or decreases in the market value of his property, or the market value of any portion of his property. AAA did not conduct an appraisal of the market value of any portion of the Arakoni Home.

20. AAA has waived, and is estopped from asserting, any right to contend that ACV should have been calculated under any methodology other than the methodology actually used by AAA, specifically including any market value methodology.

21. AAA used commercially-available computer software to make its RCV, depreciation and ACV calculations.

22. On or about April 10, 2019, AAA calculated the RCV of Arakoni's damaged home at $2,327.38.

23. AAA then used the same Xactimate price list to calculate the depreciation for Arakoni's damaged home at $939.42.

24. Arakoni was underpaid, and deprived of the use of his money from the time he should have received it until the date he recovers the wrongfully withheld amounts, as more fully described below.

**POLICY TERMS AND CLAIM SETTLEMENT PRACTICES**

25. The policy of insurance Defendant issued to Arakoni and other members of the proposed class provide RCV coverage for both total loss of and partial loss to covered dwellings and other structures and, in some cases, ACV coverage for certain structural components.

26. At all times relevant to this cause of action, Defendant's custom and practice has been to pay its RCV policy holders the ACV of covered loss claims, net of any applicable deductible. In order to qualify for additional payment and recover the full RCV of the covered loss where RCV coverage is available under the insurance policy, the insured party must repair, rebuild or replace the damaged property within a specific time frame and submit proof to Defendant that the repair or replacement was timely completed. Costs that exceed the amount of the ACV payment are the responsibility of the policyholder.

27. At all times relevant hereto, Defendant's methodology for calculating ACV has been to determine the cost of repairing or replacing the damaged property then deduct depreciation.

28. In the context of insurance law, "depreciation" is defined as "[a] decline in an asset's value because of use, wear, obsolescence, or age." BLACK'S LAW DICTIONARY 506 (9th ed. 2009). Materials used in the repair or replacement of damaged property e.g. roofing shingles or metal, diminished in value over time due to use, wear, obsolescence, and age. As such, these are assets that can be depreciated. In contrast, labor is not susceptible to aging or wear. Its value does not diminish over time. Conceptually, and practically, depreciation simply cannot be applied to labor costs.

29. The basic purpose of property insurance is to provide indemnity to policyholders. To indemnify means to put the insured back in the position he or she enjoyed before the loss – no better and no worse. A policy that provides for payment of the ACV of a covered loss is an indemnity contract because the purpose of the ACV payment is to make the insured whole but not to benefit him or her because a loss occurred. See APPLEMAN ON INSURANCE 2D § 3823. An RCV policy expands the basic concept of indemnity to include coverage for repairs and replacement costs that exceed the ACV of the loss.

30. In order to recover the RCV of their covered losses, Plaintiff and other proposed class members are required to pay the out of pocket the difference between the cost of materials and labor necessary to repair or replace the damaged property and the depreciated ACV payment they received from Defendant. While an insurer may lawfully depreciate material costs in calculating the amount of an ACV payment owed to an insured, it may not depreciate labor costs. Defendant's failure to pay the full cost of the labor necessary to repair or replace Plaintiff's damaged property in the ACV payments left Plaintiff under-indemnified and underpaid for his loss.

31. Defendant materially breached its duty to indemnify Plaintiff by depreciating labor costs associated with repairs to the Insured Property in the ACV payments, thereby paying Plaintiff less than what he was entitled to receive under the terms of the insurance contract.

32. The Ohio Department of Insurance has indicated that it is inappropriate and contrary to industry practice to depreciate labor costs when determining the ACV of structural damage claims.

## AMOUNT IN CONTROVERSY

33. Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

34. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on his own behalf and on behalf and all others similarly situated. This action satisfies the Rule 23 requirements of commonality, numerosity, superiority, typicality, and adequacy of representation.

35. The proposed class which Plaintiff seeks to represent is defined as follows:

> All AAA policyholders who made: (1) a structural damage claim for property located in the State of Ohio; and (2) which resulted in an actual cash value payment during the class period from which "non-material depreciation" was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the withholding of "non-material depreciation" causing the loss to drop below the applicable deductible.
>
> In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate software.
>
> The class period for the proposed class is the maximum time period as allowed by applicable law.
>
> The class excludes all claims arising under policy forms expressly permitting the "depreciation" of "labor" within the text of the policy form and any claims in which the initial actual cash value payment exhausted the applicable limits of insurance.

36. Plaintiff reserves his right to amend the definition of the proposed classes through discovery. The following persons are expressly excluded from the classes: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

37. The members of the proposed class are so numerous that joinder of all members is impractical. Plaintiff reasonably believes that hundreds if not thousands of people geographically dispersed across Ohio have been damaged by Defendant's actions. The names and addresses of the members of the proposed class are identifiable through records maintained by Defendant, and proposed class members may be notified of the pendency of this action by mailed, published and/or electronic notice.

38. Common questions of law and fact exist as to all proposed class members and predominate over any questions affecting only individual proposed class members. The questions of law and fact common to the proposed class include, but are not limited to:

   A. Whether Defendant's insurance policies allow Defendant to depreciate labor in calculating ACV payments for covered losses;

7

  B.  Whether Defendant's insurance policies are ambiguous concerning the depreciation of labor costs in calculating ACV payments, and if so, how Defendant's insurance policies should be interpreted;

  C.  Whether Defendant's depreciation of labor costs in making ACV payments for covered losses is a breach of the insurance contracts issued by Defendant to Plaintiff and other proposed class members.

  D.  Whether Plaintiff and other proposed class members have been damaged by Defendant's breaches, as alleged herein, and if so:

    1.  What is the nature and extent of those damages; and

    2.  What relief should be awarded to Plaintiff and other proposed class members.

39. Plaintiff's claims are typical of the claims of all the proposed class members, as they are all similarly affected by Defendant's custom and practice of unlawful and unjust conduct and their claims are based on such conduct. Further, Plaintiff's claims are typical of the claims of all proposed class members because their claims arise from the same or similar underlying facts and are based on the same factual and legal theories. Plaintiff is no different in any material respect from any other member of the proposed class – all members of the proposed class had labor unlawfully depreciated by Defendant.

40. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the class he seeks to represent. Plaintiff has retained counsel who are competent and experienced in class action litigation and complex insurance-related cases and will fairly and adequately represent the interests of the proposed class. Plaintiff and his counsel will prosecute this action vigorously.

41. A class action is superior to all available methods for the fair and efficient adjudication of this controversy. Joining all proposed class in one action is impracticable, and prosecuting individual actions is not feasible. The size of the individual claims is likely not large

enough to justify filing a separate action for each claim. For many, if not most class members, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if proposed class members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Moreover individual litigation could result in inconsistent adjudications of common issues of law and fact.

42. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiff and proposed class members. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

43. No unusual difficulties are anticipated in the management of this case as a class action.

44. Class certification is further warranted because Defendant has acted or refused to act on grounds that apply generally to the proposed class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the proposed class as a whole.

45. Plaintiff may seek, in the alternative, certification of issues classes.

46. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

## COUNT I
## BREACH OF CONTRACT

47. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

48. Defendant entered into policies of insurance with Plaintiff and other members of the proposed class. These policies govern the relationship between Defendant and Plaintiff and other proposed class members, as well as the manner in which claims for covered losses are handled.

49. The insurance policies at issue were drafted by Defendant and are essentially identical in all respects material to this litigation.

50. Plaintiff and other proposed class members complied with all material provisions and fulfilled their respective duties with regard to their policies.

51. The policies of insurance Defendant issued to Plaintiff and other proposed class members state that in the event of a loss Defendant may fulfill its initial contractual obligation to an insured party by paying the ACV of the loss. At all times relevant hereto, Defendant's custom and practice has been, and is, to make such payments based upon Defendant's calculation of the ACV for the loss, net of any applicable deductible.

52. Defendant breached its contractual duty to pay Plaintiff and other proposed class members the ACV of their claims by unlawfully depreciating labor costs.

53. Defendant's actions in breaching its contractual obligations to Plaintiff and other proposed class members benefitted, and continue to benefit, Defendant. Likewise, Defendant's actions damaged, and continue to damage, Plaintiff and other proposed class members.

54. Defendant's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and other proposed class members.

55. Accordingly, Plaintiff and other proposed class members are entitled to recover damages sufficient to make them whole for the amounts Defendant unlawfully withheld from their ACV payments as labor cost depreciation.

## COUNT II
## DECLARATORY JUDGMENT AND RELIEF

56. Plaintiff restates and incorporate by reference all preceding allegations.

57. This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

58. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

59. Plaintiff and members of the proposed class have complied with all relevant conditions precedent in their contracts.

60. Plaintiff seeks, personally and on behalf of the proposed class, a declaration that Defendant's property insurance contracts prohibit the withholding of labor costs as described herein when adjusting losses under the methodology employed here.

61. Plaintiff further seeks, personally and on behalf of the proposed class, any and all equitable relief available under the law that the Court deems necessary and proper to the administration of justice, including, but not limited to, identifying and locating policyholders, and notifying the same of the circumstances complained of and the restoration of their rights and remediation of their losses, and preclusion by Defendant in engaging in the conduct described herein, as may be permitted by law.

62. Plaintiff and members of the proposed class have suffered injuries.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, request that the Court grant the following relief:

A. Certify that this lawsuit may be prosecuted as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Appoint Plaintiff and Plaintiff's counsel to represent the proposed class;

C. Declare that Defendant has breached its contractual obligations to Plaintiff and the proposed class by depreciating labor costs;

D. Award Plaintiff and the proposed class damages in an amount equal to the total amount of depreciated labor costs withheld on Plaintiff's and proposed class members' claims that has not been paid to Plaintiff and proposed class members;

E. Award Plaintiff and the proposed class prejudgment and post-judgment interest on their liquidated and unliquidated damages;

F. Enjoin Defendant from engaging in the unlawful and unjust conduct complained of herein;

G. Award the proposed class all expenses and costs of this action, and require Defendant to pay the costs and expenses of class notice and claims administration;

H. Trial by Jury; and

I. Any and all other relief to which Plaintiff and the other proposed class members appear to be entitled.

    Respectfully submitted,

    */s/ Stephen G. Whetstone*
    STEPHEN G. WHETSTONE (0088666)
    Email: steve@whetstonelegal.com
    **Whetstone Legal, LLC**
    P.O. Box 6
    2 N. Main Street, Unit 2

Thornville, Ohio 43076
Telephone: 740.974.7730
Facsimile: 740.205.8898

*Trial Counsel for Plaintiff and the
Proposed Class*

and

ERIK D. PETERSON (KY Bar 93003)*
**Mehr, Fairbanks & Peterson
 Trial Lawyers, PLLC**
201 West Short Street, Suite 800
Lexington, Kentucky 40507
Telephone: 859-225-3731
Facsimile: 859-225-3830
Email: edp@austinmehr.com

Co-*counsel for Plaintiff and
the Proposed Class*

*\*To be admitted pro hac vice.*